UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERTO SERRANO, JR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:22-cv-01418-JPH-KMB ) |
| DOWNS, | ) ) |
| Defendant. | ) ) |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Roberto Serrano, a prisoner in the custody of the Indiana Department of Correction ("IDOC"), alleges that Officer Downs used Oleoresin Capsicum spray, also commonly referred to as OC spray and pepper spray, on him in retaliation for asking to see a mental health counselor and thereafter was deliberately indifferent to his serious medical needs when she failed to take him to a medical appointment. Mr. Serrano and Officer Downs have each moved for summary judgment. For the reasons set forth below, the Court **grants** Officer Downs's motion for summary judgment on the First Amendment retaliation claim; **denies** Officer Downs's motion for summary judgment on the Eighth Amendment deliberate indifference claim; and **denies** Mr. Serrano's motion for summary judgment.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ.

P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion

2

can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

Here, Mr. Serrano filed three replies in support of his motion for summary judgment. Dkts. 72, 73, 74. The filings at dockets 72 and 74 are duplicative and 52 pages long, exceeding the Court's 20-page limit. Local Rule 7-1(e)(1). Accordingly, only the first 20 pages of the reply brief filed at docket 72 has been considered. Also, Mr. Serrano argues in his summary judgment briefing that Officer Downs retaliated against him by holding a taser to his back, making him miss phone calls, and "put[ting] hits on his life." Dkt. 59 at 5. The only incidents involving Officer Downs referred to in the Complaint, however, are the February 9 OC spray incident and Officer Downs's refusal to take him to a sick call on April 26. Dkt. 1. It is "generally impermissible" to raise new claims on summary judgment, so the Court does not consider these arguments. *See Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489–90 (7th Cir. 2023) (it is rarely appropriate to allow new allegations in a summary judgment brief as a constructive motion to amend the complaint).

## II.
## Factual Background[1]

During the incidents in Mr. Serrano's complaint, Officer Jaime Downs worked as a Correctional Officer at PCF. Dkt. 51-3 (Downs Aff.). Mr. Serrano's allegations are based on two encounters he had with Officer Downs—first, when she used OC spray to remove him from the shower and next, when he contends that she refused to allow him to attend a medical appointment.

### A. Officer Downs's Use of OC Spray

On February 9, 2022, Mr. Serrano was in the shower when Officer Downs and another officer attempted to escort him back to his cell. Dkt. 51-1 at 49:12-22; 50:21–51:2 (Serrano Dep.); dkt. 51-2 at 3, 5 (Incident Reports); dkt. 51-3 at ¶ 5. Mr. Serrano stated that he would not exit the shower or submit to restraints until he spoke with a mental health provider.[2] *Id.* Officer Downs told Mr. Serrano that he could not be evaluated by mental health while in the shower but that she would retrieve a provider once he returned to his cell. Dkt. 51-1 at 49:16-20; dkt. 51-3 ¶ 5.

The parties' respective versions of what happened next differ. *Compare* Dkt. 52 at 2–3 *with* Dkt. 62 at 2.

---

[1] Mr. Serrano spends much of his briefing discussing a video that he contends was not produced to him. The cross motions for summary judgment can be resolved without review of video. If as the case progresses Mr. Serrano needs to raise the issue of the missing video, he may do so.

[2] In response to Officer Downs's motion for summary judgment, Mr. Serrano denies refusing to submit to restraints, but he testified at his deposition that he did refuse. Dkt. 51-1 at 49:16-22. Mr. Serrano cannot now retract that testimony. *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (the sham-affidavit rule "prohibits a party from submitting an affidavit that contradicts the party's prior deposition testimony").

Officer Downs's account is that after Mr. Serrano refused to exit the shower in response to her order, she sprayed a one-second burst of OC at Mr. Serrano through the cuff port. Dkt. 51-3 ¶ 6; dkt. 51-2 at 3, 5, 7. When Mr. Serrano still did not comply, she sprayed him with another one-second burst of OC through the top of the shower. *Id.* Officer Downs then ordered Mr. Serrano again to submit to being cuffed. Dkt. 51-3 ¶ 7; dkt. 51-2 at 3, 5, 7. Mr. Serrano verbally refused and showed no signs of being subdued by the OC. *Id.* Officer Downs then sprayed a third one-second burst of OC. Dkt. 51-3 ¶ 8; dkt. 51-2 at 5. When Mr. Serrano still did not comply, Officer Downs sprayed a fourth one-second burst of OC over the top of the shower which finally caused Mr. Serrano to submit to the restraints. Dkt. 51-3 ¶ 9; dkt. 51-2 at 5.

Contesting Officer Downs's version of the facts, Mr. Serrano points out that the relevant Incident Reports differ regarding how many times Officer Downs sprayed Mr. Serrano. *See* dkt. 62 at 2–4 (comparing dkt. 51-2 at 3 (stating that Officer Downs deployed three bursts of OC spray); 5 (Conduct Report describing three uses of OC spray); 7 (same); 8 (describing four uses of the spray); dkt. 72-1 (report indicating that Mr. Serrano refused to comply multiple times and that Officer Downs applied a one second burst of OC on target)). After Mr. Serrano complied with the restraints, he was taken to receive a medical evaluation and a decontamination shower. Dkt. 51-1 at 49:23-50:11; dkt. 51-3 ¶ 10.

At the time of this incident, Mr. Serrano had not filed any grievances against Officer Downs. *See* Dkt. 51-4 (Grievance Documents). Officer Downs testified that she was unaware of any complaint against her by Mr. Serrano and

5

that her sole motivation in using the OC spray was to gain his compliance after he refused to be restrained. Dkt. 51-3 ¶ 11.

### B. Medical Visit

Mr. Serrano alleges that Officer Downs refused to let him attend a medical sick call on April 26, 2022. The parties agree that Mr. Serrano was receiving mental health care in April of 2022. The parties also agree that Mr. Serrano had a scheduled appointment on April 26, 2022, that he did not attend. Beyond that, the parties' descriptions of this day diverge significantly.

#### 1. Officer Downs's Description of the Events

The parties agree that Mr. Serrano was receiving mental health care in April of 2022. Officer Downs believed that Mr. Serrano had a history of mental instability at that time. *Id.* ¶ 4. On April 4, 2022, Mr. Serrano submitted a HCRF for feelings of stress and generalized depression. Dkt. 51-5 at 10.

At some point before April 26, 2022, Officer Downs believed that Mr. Serrano had an inappropriate obsession with mental health provider Syndey Husar and began exhibiting physical aggression towards her. Dkt. 51-3 ¶ 13. Mr. Serrano was scheduled for a mental health appointment on April 26, 2024. Dkt. 51-3 ¶ 14. Officer Downs states that she started to escort Mr. Serrano to his appointment when Mr. Serrano saw Ms. Husar and tried to lunge toward her. Dkt. 51-3 ¶ 14. After Officer Downs regained control of Mr. Serrano, she advised him that she would not take him to his appointment and returned him to his cell. *Id.* She explains that she did so because she believed that Mr. Serrano posed a serious safety risk to Ms. Husar. *Id.* ¶ 17. She further testifies that she checked

6

on Mr. Serrano about five times while conducting security rounds and didn't observe anything to suggest that Mr. Serrano needed urgent medical or mental health care. *Id.* ¶ 16.

That day, Mr. Serrano did not tell Officer Downs that he was suffering from any mental health or medical symptoms. *See* dkt. 51-1 at 19:9-13, 31:22-25. At that time, Officer Downs believed that Mr. Serrano was seen regularly by mental health staff. Dkt. 51-3 ¶ 15; *see also* dkt. 51-1 at 32:17-19 ("They are supposed to come over on G every week.").

### 2. Mr. Serrano's Version

Mr. Serrano asserts that on April 26, Officer Downs failed to take him to a scheduled medical, not mental health counseling, appointment.[3] Mr. Serrano had submitted a healthcare request form (HCRF) on April 15, 2022, stating that he had been coughing and sneezing because of the condition of his cell and that the food is not properly made. Dkt. 58-1 at 1. He testified that he was told that the nurse came to see him on April 26, but he was working, and no one came to set him up to see the nurse. Dkt. 51-1 at 18:23-25. Officer Downs signed a refusal form stating that Mr. Serrano did not show up for nursing sick call and that he was informed that "he needed to present himself for healthcare request form # 387918...." Dkt. 58-1 at 2. Mr. Serrano testifies that he did not, in fact, refuse. Dkt. 51-1 at 19:16-22.

---

[3] Officer Downs contends that Mr. Serrano's HCRF referenced only his mental health issues. Dkt. 52 at 5 (citing Dkt. 51-1 at 1, 9-10). But the medical record Officer Downs references refers to a sick visit with a nurse, dkt. 51 at 1. And, Mr. Serrano had submitted an HCRF for physical symptoms before that date. Dkt. 58-1.

7

Mr. Serrano testifies that Officer Downs was the officer who escorted prisoners to sick call "only sometimes." Dkt. 51-1 at 25:1-3. He states that he believes that she was the Officer who failed to escort him to sick call "[b]ecause she was working our range, and she signed off on the health care form, or her name is on there." *Id.* at 25:22-24. Mr. Serrano submitted a HCRF on April 27, 2022, asking why he was not seen for sick call yet. Dkt. 51-5 at 9. The response stated "No show with refusal 4/26. You have to come out of your cell." *Id.*

### III.
### Discussion

The parties seek summary judgment on the claims that Officer Downs used OC spray against Mr. Serrano in violation of his First Amendment rights and that she failed to escort him to his appointment in violation of his Eighth Amendment rights.

**A. OC Spray**

Mr. Serrano contends that Officer Downs retaliated against him when she sprayed him in the shower. Dkt. 1 at 3. To succeed on a First Amendment retaliation claim, Mr. Serrano must present evidence sufficient to allow a reasonable jury to conclude that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in Officer Downs's decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022).

Here, it's undisputed that Mr. Serrano asked to see a mental health counselor. Officer Downs argues that Mr. Serrano's request exceeded the realm

8

of protected activity because he did so in a way that posed a threat to prison security. Dkt. 52 at 8.

A request for medical or mental health care can be protected First Amendment activity. *See Czapiewski v. Pingel*, No. 16-CV-1709, 2017 WL 435803, at *2 (E.D. Wis. Feb. 1, 2017) (allowing retaliation claim to proceed where plaintiff alleged that he expressed a need for medical/psychological care and that, as a result of expressing that need, he received a conduct report and was placed in the restricted housing unit); *Thomas v. Wolfe,* No. 112-CV-443-JMS-DKL, 2016 WL 4592201, at *2 (S.D. Ind. Sept. 2, 2016) (allowing claim to proceed where defendant allegedly retaliated against plaintiff by issuing him a conduct report for submitting health care request forms and seeking copies of his medical records).

To determine whether Mr. Serrano's request made while he was in shower on April 26 was protected, the court evaluates whether "he engaged in this speech in a manner consistent with legitimate penological interests." *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010). "The prison setting is distinctive, and it affects many constitutional rights." *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023). An inmate's speech is not protected if it is disruptive or confrontational; for example, "back talk" is not protected speech. *Id.* (citing *Watkins*, 599 F.3d at 798, 799; *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015)).

Here, Mr. Serrano admits that he initially refused to leave the shower, hoping to be seen by mental health. Dkt. 51-1 at 49:16-22. Because Mr. Serrano

9

demanded to be seen by a mental health counselor while in the shower and refused to comply with Officer Downs's instruction to cuff-up and leave the shower to return to his cell, his request was not protected by the First Amendment, and Officer Downs is entitled to summary judgment on this retaliation claim. *See Watkins*, 599 F.3d at 798 (the "confrontational, disorderly manner" in which the prisoner complained removed his grievances from First Amendment protection).

### B. Medical Visit

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Officer Downs argues that she's entitled to summary judgment on Mr. Serrano's deliberate indifference claim based on her understanding that his claim alleges her failure to escort him to a mental health appointment on April

26, 2022. Dkt. 51 at 10–12. She argues that she began to escort Mr. Serrano but took him back to his cell after he lunged at Ms. Husar, so she had a valid penological purpose for failing to escort Mr. Serrano to his appointment. Dkt. 52 at 10; dkt. 64 at 6–7. But Mr. Serrano's claim is not based on this set of facts. Instead, he alleged in his complaint and testified in his deposition that he was denied a sick call appointment for physical symptoms. Dkt. 2 at 2; Dkt. 51-1 at 18:6-15.  Officer Downs further argues that she was unaware that depriving Mr. Serrano of his appointment would subject him to a serious risk of harm. Dkt. 52 at 11–12; dkt. 64 at 5–6.  But that argument relies on evidence that is contested by Mr. Serrano.

Mr. Serrano's medical records show that he had a medical appointment on April 26 for his healthcare request regarding physical symptoms of coughing and sneezing since being placed in a "strip cell" that needed to be cleaned. Dkt. 58-1 at 1–2. Those records also provide evidence that Officer Downs knew that Mr. Serrano was supposed to be seen for an appointment that day because she signed a form that same day saying that Mr. Serrano "needed to present himself" for the appointment but "[d]id not show up." *Id.* at 2. The form references Mr. Serrano healthcare request form and states that the "offender refused medical." *Id.* And even if Officer Downs believed that the appointment was a mental health appointment instead of a sick call, this form contradicts her affidavit testimony that she took Mr. Serrano to the appointment but had to turn around due to Mr. Serrano lunging at a mental health provider on the way to the appointment. Dkt. 51-3 ¶ 14.

There are also triable issues of fact about whether Officer Downs was responsible for transporting Mr. Serrano to the appointment and whether he actually refused to go. Based on the healthcare refusal form signed by Officer Downs and Mr. Serrano's testimony that Officer Downs was working on his range on the day of the appointment and that correctional officers like her are responsible for taking inmates to medical appointments, a reasonable jury could infer that Officer Downs was responsible for taking him to the appointment. Dkt. 51-1 at 26, 38; dkt. 58-1 at 2. Similarly, based on Mr. Serrano's testimony that no one came to get him and that he had not refused to go, a reasonable jury could find that Mr. Serrano did not actually refuse to go to his medical appointment, but that Officer Downs refused to take him. Dkt. 51-1 at 21.

There is therefore a triable issue of fact on whether Officer Downs was deliberately indifferent to Mr. Serrano's serious medical needs. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (the "most obvious" form of deliberate indifference "is a prison official's decision to ignore a request for medical assistance"); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (explaining that while non-medical defendants "can rely on the expertise of medical personnel . . . if a prisoner is under the care of medical experts," they "cannot simply ignore an inmate's plight.").

Mr. Serrano also seeks summary judgment on this claim, contending that Officer Downs did not fulfill her responsibility to take him to his medical appointment. *See* dkt. 59 at 5. But there is also evidence that Officer Downs didn't know that he had a medical appointment that day, dkt. 51-3 ¶ 14, and

12

that Mr. Serrano refused to be seen, dkt. 58-1 at 2. There are therefore disputes of fact on this claim that cannot be resolved at summary judgment in either Officer Downs's favor or in Mr. Serrano's favor. *See R.J. Corman Derailment Servs.*, 335 F.3d at 647.

## IV.
## Further Proceedings and Remaining Claims

Mr. Serrano's Eighth Amendment claim that Officer Downs exhibited deliberate indifference to his medical needs when she failed to escort him to a healthcare visit will proceed.

The **clerk shall include** a form motion for assistance with recruiting counsel with Mr. Serrano's copy of this Order. If Mr. Serrano wishes to ask the Court to attempt to recruit counsel to represent him, he should file this form **within 28 days**.

Once the issue of recruited counsel is resolved, the parties shall address whether other claims remain in this case. Mr. Serrano's complaint is mainly a brief recitation of the facts on which his claims are based. Dkt. 1. The Court's screening order generally permitted First and Eight Amendment claims to proceed based on Mr. Serrano's allegations of the events on February 9, 2022 and April 26, 2022. Dkt. 8. But Officer Downs moved for summary judgment on only a retaliation claim for the OC spray incident and an Eighth Amendment claim based on the medical visit incident. Mr. Serrano's briefing vaguely references both the First and Eighth Amendments throughout, but also fails to clarify whether he intends to pursue an Eighth Amendment claim based on the OC spray incident or a First Amendment claim based on the medical visit

13

incident. Thus, if counsel is recruited, that counsel **shall have sixty days from the date of appointment** to file a supplemental brief identifying whether Mr. Serrano wishes to pursue these additional claims. If Mr. Serrano does not seek counsel, he **shall have through May 24, 2024** to file a supplemental brief identifying whether he wishes to pursue these additional claims. Officer Downs will have **28 days** to respond. No further discovery on these matters will be permitted without express leave of Court.

## V.
## Conclusion

Officer Downs's motion for summary judgment, dkt. [50], is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Mr. Serrano's claim that she retaliated against him when she used OC spray on him. The motion is **DENIED** as to Mr. Serrano's claim that Officer Down violated his Eighth Amendment rights when she failed to take him to his appointment. Mr. Serrano's motion for summary judgment, dkt. [58], is **DENIED**.

Mr. Serrano has **28 days from the date of this order** to return the motion for the Court to attempt to recruit counsel to represent him.

**SO ORDERED.**

Date: 3/25/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ROBERTO SERRANO, JR
197945
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

All electronically registered counsel